Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Stephen Ferruolo (Cal. Bar No. 364158)
sferruolo@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRITNI WARNER, ASHLEY BAADSGAARD, and MICHELLE MARQUEZ, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>GOOD VIBES TRADING COMPANY, INC.,<br><br>*Defendant*. | Case No. 8:25-cv-02203-FWS-ADS<br><br>**FIRST AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# Table of Contents


I. Introduction. 1

II. Parties. 3

III. Jurisdiction and Venue. 4

IV. Facts. 4

A. Defendant's fake sales and discounts. 4

B. Defendant's advertisements are unfair, deceptive, and unlawful. 13

C. Defendant's advertisements harm consumers. 14

D. Plaintiffs were misled by Defendant's misrepresentations. 15

E. Defendant breached its contracts with and warranties to Plaintiffs and the putative Class. 23

F. No adequate remedy at law. 24

V. Class Action Allegations. 25

VI. Claims. 27

First Cause of Action: Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq. 27

Second Cause of Action: Violation of California's Consumer Legal Remedies Act (CLRA) 29

Third Cause of Action: Violation of California's Unfair Competition Law 31

Fourth Cause of Action: Breach of Contract 34

Fifth Cause of Action: Breach of Express Warranty 35

Sixth Cause of Action: Quasi-Contract/Unjust Enrichment 36

Seventh Cause of Action: Negligent Misrepresentation 37

Eighth Cause of Action: Intentional Misrepresentation 38

VII. Relief. 39

## I. Introduction.

1. Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they believe that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2. While there is nothing wrong with a legitimate sale, a fake one—that is, one with misleading regular prices and deceptive discounts—is illegal.

3. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

4. Moreover, section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, California's False Advertising Law also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

5. In addition, California's Consumers Legal Remedies Act prohibits "advertising goods or services with intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

6. The Federal Trade Commission's regulations also prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off of that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely

suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.2.

7. So, as numerous courts have found, fake sales violate these laws. They also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

8. Defendant Good Vibes Trading Company, Inc., DBA Modern Gents ("Modern Gents" or "Defendant") makes, sells, and markets engagement rings, wedding bands, jewelry, and other items (the "Modern Gents Products" or "Products"). The Products are sold online through Defendant's website, www.modgents.com.

9. On its website, Defendant lists purported regular prices and advertises substantial discounts from those listed regular prices. It does so in two ways. First, on product listings, it lists strikethrough prices representing the regular price of the products. For example:




*Internet Archive May 16, 2025*

10. But the products are not regularly sold for the strikethrough price: it is a misleading reference price that overstates the value of the jewelry to induce purchases.

11. Second, Modern Gents advertises extremely frequent discounts that purport to offer substantial discounts even on top of the purportedly already-discounted price. For example:




*Internet Archive February 16, 2025*

12. But these sales are so pervasive that consumers are not really receiving the advertised discount off the regular prices (the prices most consumers pay). The sale names also suggest that they are time limited (e.g. Easter or Memorial Day). Or the sale will include a countdown clock. But in reality, substantial discounts are almost always available.

13. In sum, Modern Gents' purported sales are misleading in several ways: the strikethrough prices are deceptive, the supposed discounts (on top of the strikethrough prices) are misleading, and the supposed time limited nature of the sales is misleading.

14. As described in greater detail below, Ms. Warner,[1] Ms. Baadsgaard, and Ms. Marquez bought Products from Defendant through its website, www.modgents.com. They were misled by Defendant's advertised discounts. Plaintiffs bring this case for themselves and other similar California consumers who purchased misleadingly-discounted Modern Gents Products.

## II. Parties.

15. Plaintiff Britni Warner is domiciled in Redding, CA.

16. Plaintiff Ashley Baadsgaard is domiciled in San Diego, CA.

17. Plaintiff Michelle Marquez is domiciled in Sacramento, CA.

18. The proposed Class includes citizens of every state.

[1] Ms. Warner legally changed her name from Britni Smith to Britni Warner in July of 2025.

19. Defendant Good Vibes Trading Company, Inc. is a California corporation with its principal place of business at 3195 Red Hill Avenue Suite C, Costa Mesa, CA 92626.

**III. Jurisdiction and Venue.**

20. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed Class are citizens of a state different from Defendant.

21. The Court has personal jurisdiction over Defendant because Defendant's principal place of business is in California.

22. Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District (at its headquarters).

**IV. Facts.**

**A. Defendant's fake sales and discounts.**

23. Defendant manufactures, distributes, markets, and sells engagement rings, wedding bands, jewelry, and other items. Modern Gents sells its Products directly to consumers online, through its website, www.modgents.com.

24. Defendant creates the false impression that its Products' regular prices are higher than they truly are. It does this in several ways.

***Misleading strikethrough prices***

25. Defendant's website lists misleading regular prices in strikethrough font (that is, prices reflecting the purported list price or value of an item). For example:




*Internet Archive October 8, 2024 (Ladies Rings)*




*Internet Archive January 24, 2025 (Men's Rings)*

26. To reasonable consumers, the strikethrough price represents the former and regular price of the product. It also conveys the market value of the product.

27. But in reality, Modern Gents does not regularly sell the Products at the strikethrough price. The strikethrough price is not the true former price, not the true regular price, and not the true market value. It is instead a misleading reference price that makes the jewelry appear more valuable and induces sales.

***Misleading discounts on top of the strikethrough price***

28. On top of the misleading strikethrough prices, Modern Gents offers misleading additional supposed discounts (e.g. 25% off sitewide). Defendant's website persistently offers "X% off" sitewide. Reasonable consumers reasonably interpret Defendant's advertisements to mean that they will be getting a discount "off" of the prices that Defendant usually charges for its Products. And Defendant suggests that the sales are time limited by claiming that the sale is for some event or time period like a "Spring Bling Sale" or a "Memorial Day Sale." And it advertises these discounts extensively on its website. For example:




*Internet Archive October 11, 2023*




*Internet Archive May 9, 2024*




*Internet Archive August 8, 2024*




*Internet Archive May 15, 2025*

29. Defendant also advertises discounts via text message and its email list. Plus, it displays a large pop-up banner when consumers visit its website, that will always spin to a substantial supposed discount:




*Captured September 25, 2025*

30. Defendant represents that these discounts and sales will only be available for a limited time, but in reality, significant discounts are nearly always available. For example, as shown below, Defendant represented that it was offering a sale for the New Year. To reasonable consumers, this means that shortly after the New Year, Defendant's Products will no longer be on sale and will retail at their purported regular price.




*Internet Archive January 1, 2025*

31. But on the next available archive date—January 23, 2025—Defendant was advertising a Valentine's Day Sale with the same discount as the New Year's Sale:




*Internet Archive January 23, 2025*

32. This "25% off" sale was quickly followed by a "Presidents' Day Flash Sale" of "UP TO 27% OFF."




*Internet Archive February 16, 2025*

33. The sales also sometimes include countdown clocks that pressure consumers to take advantage of the discount before it supposedly ends. For example:




*Internet Archive August 27, 2025*

34. To confirm that Defendant nearly always offers discounts off of purported regular prices, Plaintiffs' counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org).[2] That investigation confirms that Defendant's sales have persisted nearly continuously. For example, screenshots of Defendant's website, www.modgents.com, were collected from the Internet Archive's Wayback Machine, from between January 2024 and August 2025. Plaintiffs' counsel's investigation shows that from 2024 to at least August 2025, Modern Gents has been offering a similar purported sale each month. The sales are near permanent:

| Date of Website Capture | Sale |
|---|---|
| January 1, 2024 | New Year's Sale, 20-30% Off Sitewide |
| January 29, 2024 | Valentine's Day Sale, 30% Off Sitewide |
| February 4, 2024 | Valentine's Day Sale, 30% Off Sitewide |
| March 24, 2024 | Spring Bling Sale, 25% Off Sitewide |
| March 29, 2024 | Easter Sale, 25% Off Sitewide |
| April 3, 2024 | Friends & Family Sale, 27% Off Sitewide |
| April 9, 2024 | Friends & Family Sale, 27% Off Sitewide |
| May 9, 2024 | Mother's Day Sale, 25% Off Sitewide |
| May 21, 2024 | Memorial Day Sale, 20% Off Sitewide |
| May 27, 2024 | Memorial Day Sale, 15% Off Sitewide |
| June 16, 2024 | Endless Summer Sale, 10% Off Sitewide |
| June 21, 2024 | Endless Summer Sale, 10% Off Sitewide |
| July 11, 2024 | Endless Summer Sale, 10% Off Sitewide |
| August 5, 2024 | Perfect Pair Sale, 10% Off Sitewide |
| August 8, 2024 | Perfect Pair Sale, 10% Off Sitewide |
| August 22, 2024 | Modern Bride Sale, 10% Off Sitewide |
| September 23, 2024 | Fall Bling Sale, 10% Off Sitewide |
| October 2, 2024 | Sweater Weather Sale, 10% Off Sitewide |
| October 8, 2024 | Sweater Weather Sale, 10% Off Sitewide |
| November 9, 2024 | Veterans Day Flash Sale, 15% Off Sitewide |
| December 26, 2024 | Ring In The New Year Sale, 25% Off Sitewide |
| January 1, 2025 | Ring In The New Year Sale, 25% Off Sitewide |

[2] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/.

| Date of Website Capture | Sale |
|---|---|
| January 23, 2025 | Valentine's Day Sale, 25% Off Sitewide |
| February 6, 2025 | Valentine's Day Sale, 25% Off Sitewide |
| February 16, 2025 | Presidents' Day Flash Sale, 27% Off Sitewide |
| March 25, 2025 | Spring Bling Sale, 20% Off Sitewide |
| March 31, 2025 | Spring Bling Sale, 20% Off Sitewide |
| April 11, 2025 | Friends & Family Sale, 25% Off Sitewide |
| April 26, 2025 | Warmer Days Sale, 20% Off Sitewide |
| May 15, 2025 | Season of Love Sale, 20% Off Sitewide |
| May 19, 2025 | Refresh Your Style Sale, 20% Off Sitewide |
| June 7, 2025 | Forever Starts Here Sale, 25% Off Sitewide |
| June 8, 2025 | Forever Starts Here Sale, 25% Off Sitewide |
| July 12, 2025 | Prime Flash Sale, 30% Off Sitewide |
| July 24, 2025 | Anniversary Sale, 33% Off Sitewide |
| August 26, 2025 | Labor Day Sale, 25-30% Off Sitewide |
| August 27, 2025 | Labor Day Sale, 33% Off Sitewide |

35. In some cases, to obtain Defendant's advertised discounts on the Modern Gents website, consumers must enter an advertised promotional code. When promotional codes are necessary to access a sale, the codes are prominently advertised across the Modern Gents website. For example:




*Internet Archive March 24, 2024*

36. As a result of this extensive advertising, reasonable consumers notice when Defendant advertises promotional codes. And, because reasonable consumers value

discounts, when promotional codes are required to access an apparent discount, the vast majority of Defendant's sales are made by consumers using the promotional codes or other discounts, at the advertised discount price (and not the supposedly regular list price).

37. Reasonable consumers do not realize the fake nature of the sale. It is not apparent from merely purchasing the Products, because the sale appears to be a bona fide sale. Consumers do not have any reason to go back to the website day after day to discover that there is still a sale. And, even a consumer who occasionally checks the website would reasonably believe that there happened to be another sale—especially when Defendant changes the names of its sales despite offering the same or a similar discount. Discovering Defendant's deception required extensive mining of internet archives.

38. Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the price at which the goods were actually offered for sale on Defendant's website before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the sale began, and will again have to pay for Defendant's goods when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the supposed sale, and after the sale ends, consumers buying from Defendant on its website had to (or will have to) pay the list price to get the item and did not (or will not) have the opportunity to get a discount from that list price.

39. Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market value of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant nearly always offers discounts off the purported regular prices it advertises. As a result,

everything about Defendant's price and purported discount advertising is misleading. The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells. And, the list prices do not represent the true market value for the Products, because Defendant's Products are nearly always available for less than that on Defendant's website, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discounts the customer is receiving, and are often not a discount at all. Nor are the purported discounts time limited—they are pervasive.

**B. Defendant's advertisements are unfair, deceptive, and unlawful.**

40. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

41. Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

42. In addition, California's Consumers Legal Remedies Act prohibits "advertising goods or services with intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

43. In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.2.

44. And finally, California's Unfair Competition Law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

45. Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market prices in the three months immediately preceding the advertisement. In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engaged in unlawful, unfair, and deceptive business practices.

**C. Defendant's advertisements harm consumers.**

46. Based on Defendant's advertisements, reasonable consumers would expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products and that these are the former prices that Defendant sold its Products at before the discount was introduced.

47. Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

48. In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

49. Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on

making a purchase."[3] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[4]

50. Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[5]

51. Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiffs and the Class paid more for the Products they bought than they otherwise would have.

**D. Plaintiffs were misled by Defendant's misrepresentations.**

52. On or around March 11, 2025, Ms. Warner bought one "The Eternity - Gold" product and one "The Camille – Gold" product from Modern Gents online at www.modgents.com while living in Redding, California. At the time she made her purchase, Defendant's website was offering supposed discounts off Defendant's list prices. The website represented that "The Eternity – Gold" ring had a regular price of $189.95, displayed in strikethrough font, but was on sale for a discounted price of $84.95

---

[3] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[4] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[5] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

The following example screenshot, from around the time of her purchase, is representative of what Ms. Warner saw:




*Internet Archive May 16, 2025*

53. The website also represented that "The Camille – Gold" ring had a regular price of $209.95, displayed in strikethrough font, but was on sale for a discounted price of $124.95. The following image is representative of what Ms. Warner saw:




*Internet Archive March 26, 2025*

54. The strikethrough prices led Ms. Warner to believe that she was getting a substantial discount off the regular price (and market value) of these rings. But as alleged in detail above, that was not true.

55. Ms. Warner was also misled in a second way. Modern Gents sent her a text discount code, offering a purported $60 off any purchase of $200 or more. This code suggested that she was getting $60 off what consumers regularly had to pay for the rings. But because Modern Gents pervasively offered percentage discounts off even the supposedly marked down price, Ms. Warner was not really getting $60 off the true regular prices of these rings.

56. On or around March 26, 2025, Ms. Warner also bought one "The Titan Ring - Gold" product from Defendant's website, www.modgents.com. She made this purchase while living in Redding, California. At the time she made the purchase, Defendant's website was offering supposed discounts off Defendant's list prices. The website represented that "The Titan Ring – Gold" had a regular price of $149.95, displayed in strikethrough font, plus tax but was on sale for a discounted price of $59.95. The following image is representative of what Ms. Warner saw:




*Internet Archive April 29, 2025*

57. The strikethrough price led Ms. Warner to believe that she was getting a substantial discount off the regular price (and market value) of this ring. But as alleged in detail above, that was not true.

58. Ms. Warner was also again misled by a supposed discount on top of the strikethrough price. Modern Gents sent her a text discount code, offering a supposed expiring credit of 31% (a supposed credit of $18.59 off $59.95). But because Modern Gents pervasively offered percentage discounts off even the supposedly marked down price, Ms. Warner was not really getting 31% off the true regular price of this ring. For example, at the time of her purchase, Modern Gents was offering everyone a "Spring Bling" sale of 20% off. And as illustrated above, similar substantial discounts were nearly always available.

59. In sum, Ms. Warner was misled by the strikethrough prices and by the supposed discounts on top of those prices. Ms. Warner read and relied on Defendant's representations on the website, specifically that the Products were being offered at a discount and had the regular prices listed above. Based on Defendant's representations described and shown above, she reasonably understood that Defendant regularly (and before the promotion Defendant was advertising) sold the Products she was purchasing at the published regular prices, that these regular prices were the market value of the Products that she was buying, and that she was receiving the advertised discounts as compared to the regular prices. She would not have made the purchases, at the price she paid, if she had known that the discounts were misleading.

60. On or around March 16, 2024, Ms. Baadsgaard bought one "The Forever - Gold" product and one "The Claire – Gold" product from Modern Gents online at www.modgents.com while living in San Diego, California. At the time she made her purchase, Defendant's website was offering supposed discounts off Defendant's list prices. The website represented that "The Claire – Gold" ring had a regular price of $209.95, displayed in strikethrough font, but was on sale for a discounted price of $99.95

The following example screenshot, from around the time of her purchase, is representative of what Ms. Baadsgaard saw:




*Internet Archive April 17, 2024*

61. The website also represented that "The Forever – Gold" ring had a regular price of $189.95, displayed in strikethrough font, but was on sale for a discounted price of $74.95. The following image is representative of what Ms. Baadsgaard saw:




*Internet Archive April 15, 2024*

62. The strikethrough prices led Ms. Baadsgaard to believe that she was getting a substantial discount off the regular price (and market value) of these rings. But as alleged in detail above, that was not true.

63. Ms. Baadsgaard was also misled in a second way. Modern Gents was offering a purported 29% off discount code. This code suggested that she was getting

29% off what consumers regularly had to pay for the rings. But because Modern Gents pervasively offered percentage discounts off even the supposedly marked down price, Ms. Baadsgaard was not really getting 29% off the true regular prices of these rings.

64. In sum, Ms. Baadsgaard was misled by the strikethrough prices and by the supposed discounts on top of those prices. She read and relied on Defendant's representations on the website, specifically that the Products were being offered at a discount and had the regular prices listed above. Based on Defendant's representations described and shown above, Ms. Baadsgaard reasonably understood that Defendant regularly (and before the promotion Defendant was advertising) sold the Products she was purchasing at the published regular prices, that these regular prices were the market value of the Products that she was buying, and that she was receiving the advertised discounts as compared to the regular prices. She would not have made the purchases, at the price she paid, if she had known that the discounts were misleading.

65. On or around November 24, 2024, Ms. Marquez bought one "Elegant Ring Box," one "Modern Ring Box," one "The Bella" ring, and one "The Sofia" ring product from Modern Gents online at www.modgents.com while living in Sacramento, California. At the time she made her purchase, Defendant's website was offering supposed discounts off Defendant's list prices. The website represented that the "Elegant Ring Box" had a regular price of $24.95, displayed in strikethrough font, but was on sale for a discounted price of $9.95 The following example screenshot, from around the time of her purchase, is representative of what Ms. Marquez saw:




*Internet Archive December 3, 2024*

66. The website similarly represented that the "Modern Ring Box" had a regular price of $21.95, displayed in strikethrough font, but was on sale for a discounted price of $9.95. The following image is representative of what Ms. Marquez saw:




*Internet Archive November 7, 2024*

67. The website also represented that "The Bella" ring had a regular price of $159.95, displayed in strikethrough font, but was on sale for a discounted price of $84.95. The following image is representative of what Ms. Marquez saw:




*Internet Archive January 26, 2025*

68. The website also represented that "The Sofia" ring had a regular price of $209.95, displayed in strikethrough font, but was on sale for a discounted price of $124.95. The following image is representative of what Ms. Marquez saw:




*Internet Archive January 26, 2025*

69. The strikethrough prices led Ms. Marquez to believe that she was getting a substantial discount off the regular price (and market value) of these rings. But as alleged in detail above, that was not true.

70. Ms. Marquez was also misled in a second way. Modern Gents was offering a purported 33% off discount code. This code suggested that she was getting 33% off what consumers regularly had to pay for the rings. But because Modern Gents pervasively offered percentage discounts off even the supposedly marked down price, Ms. Marquez was not really getting 33% off the true regular prices of these rings.

71. In sum, Ms. Marquez was misled by the strikethrough prices and by the supposed discounts on top of those prices. Ms. Marquez read and relied on Defendant's representations on the website, specifically that the Products were being offered at a discount and had the regular prices listed above. Based on Defendant's representations described and shown above, Ms. Marquez reasonably understood that Defendant regularly (and before the promotion Defendant was advertising) sold the Products she was purchasing at the published regular prices, that these regular prices were the market value of the Products that she was buying, and that she was receiving the advertised discounts as compared to the regular prices. She would not have made the purchases, at the price she paid, if she had known that the discounts were misleading.

72. Plaintiffs and other reasonable consumers are not fake sale detectives. Reasonable consumers are not monitoring Defendant's website every day for months or years. And even a consumer who occasionally checks the website would reasonably believe that there happened to be another legitimate sale. As illustrated above, discovering Defendant's deception required extensive mining of internet archives.

**E. Defendant breached its contracts with and warranties to Plaintiffs and the putative Class.**

73. When Plaintiffs, and other members of the putative Class, purchased and paid for the Modern Gents Products that they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made

purchases. Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.

74. Defendant's website lists the market value of the items that Defendant promised to provide (which, for Plaintiffs, are shown above). Defendant agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Plaintiffs and putative Class members. For example, Defendant offered to provide Ms. Warner (among other things) the "Titan Ring – Gold with a market value of $149.95. But in truth, it had a value even less than $59.95 (due to pervasive discounts on top of the strikethrough). Defendant also warranted that the regular price and market value of the Product Ms. Warner purchased was the advertised list price and warranted that Ms. Warner was receiving a specific discount on the Product.

75. The regular price and market value of the items Plaintiffs and putative Class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

76. Plaintiffs and other members of the putative Class performed their obligations under the contract by paying for the items they purchased.

77. Defendant breached its contract by failing to provide Plaintiffs and other members of the putative Class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised. Defendant also breached warranties for the same reasons.

**F. No adequate remedy at law.**

78. Plaintiffs seek damages and, in the alternative, restitution. Plaintiffs are permitted to seek equitable remedies in the alternative because they have no adequate remedy at law.

79. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiffs' equitable claims are different and do not require the same showings as Plaintiffs' legal claims. For example, Plaintiffs' FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiffs may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of their legal claims.

80. In addition, to obtain a full refund as damages, Plaintiffs must show that the Products they bought have essentially no market value. In contrast, Plaintiffs can seek restitution without making this showing. This is because Plaintiffs purchased Products that they would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain that obtaining a refund in equity.

81. Furthermore, the remedies at law available to Plaintiffs are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

## V. Class Action Allegations.

82. Plaintiffs bring the asserted claims on behalf of the proposed Class or, in the alternative, on behalf of the proposed California Subclass:

- Class: All persons nationwide who, within the applicable statute of limitations period, purchased one or more Modern Gents Products advertised at a discount on Defendant's website (the "Class").
- California Subclass: All such persons who resided in California when they made their purchases.

83. The following people are excluded from the proposed Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in

which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity & Ascertainability***

84. The proposed Class and California Subclass contains members so numerous that separate joinder of each member of the Class is impractical. There are tens or hundreds of thousands of Class and California Subclass members.

85. Class members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions***

86. There are questions of law and fact common to the proposed Class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express warranty;

(5) restitution or damages needed to reasonably compensate Plaintiffs and the proposed Class.

***Typicality & Adequacy***

87. Plaintiffs' claims are typical of the proposed Class. Like the proposed Class, Plaintiffs purchased Modern Gents Products advertised at a discount on Defendant's website. There are no conflicts of interest between Plaintiffs and the Class.

*Superiority*

88. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

**First Cause of Action:**

**Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq.**

**(By Plaintiffs and the Class, or alternatively, the California Subclass)**

89. Plaintiffs incorporate the facts alleged above.

90. Plaintiffs bring this cause of action on behalf of themselves and members of the Class. In the alternative, Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

91. Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

92. Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiffs and Class members.

93. As alleged more fully above, Defendant advertises former prices along with discounts. As described in detail above, Modern Gents does this using strikethrough prices and supposed discounts on top of the strikethrough discount.

94. As described above, the prices advertised by Defendant are not Defendant's regular or former prices. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading. In addition, Defendant's representations that its discounts are available for a certain time period are false and misleading too.

95. In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

96. Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on the statements when purchasing Modern Gents Products. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decisions.

97. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Modern Gents Products.

98. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the Class.

99. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

100. For the claims under California's False Advertising Law, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**<u>Second Cause of Action</u>:**

**Violation of California's Consumer Legal Remedies Act (CLRA)**

**(By Plaintiffs and the Class, or alternatively, the California Subclass)**

101. Plaintiffs incorporate the facts alleged above.

102. Plaintiffs bring this cause of action on behalf of themselves and members of the Class. In the alternative, Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

103. Plaintiffs and the Class are "consumers," as the term is defined by California Civil Code § 1761(d).

104. Plaintiffs and the Class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

105. The conduct alleged in this First Amended Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

106. As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Class members. Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

107. Defendant violated, and continues to violate, section 1770 of the California Civil Code.

108. Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

109. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being

offered at a discount, when in fact Defendant does not intend to sell the Products at a true discount off the regular prices.

110. And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, including by (1) misrepresenting the regular price of Products on its website, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, (4) misrepresenting the reason for the sale (*e.g.*, "Labor Day Sale," when in fact the sale is ongoing and not limited to Labor Day).

111. Defendant's representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

112. Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing Modern Gents Products. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decisions.

113. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Modern Gents Products.

114. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the Class.

115. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

116. Accordingly, pursuant to California Civil Code § 1780(a), Plaintiffs, on behalf of themselves and all other members of the Class, seek injunctive relief.

117. CLRA § 1782 NOTICE. On September 17, 2025 a CLRA demand letter on behalf of Ms. Warner was sent to Defendant's principal place of business and to its California registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. CLRA demand letters were then sent on behalf of Ms. Baadsgaard on October 20, 2025 and Ms. Marquez on October 14, 2025 to Defendant's principal place of business and to its California registered agent via certified mail (return receipt requested). Defendant received Ms. Warner's letter by September 22, 2025 (California registered agent) and September 19, 2025 (principal place of business). Defendant received Ms. Baadsgaard's letter by October 22, 2025 (California registered agent and principal place of business). Defendant received Ms. Marquez's letter by October 16, 2025 (California registered agent and principal place of business). In the initial complaint, Ms. Warner sought injunctive relief, and did not seek damages, on her CLRA claims. But the complaint stated that "[i]f Defendant does not fully correct the problem for Plaintiff and for each member of the Class within 30 days of receipt, Plaintiff and the nationwide Class will seek all monetary relief allowed under the CLRA." Now, 30 days have passed and Defendant has not corrected the problem for Plaintiffs and for each member of the nationwide Class. Accordingly. Plaintiffs now seek all monetary damages under the CLRA, including damages and attorney fees.

118. Plaintiffs' CLRA venue declarations are attached.

**<u>Third Cause of Action</u>:**

**Violation of California's Unfair Competition Law**

**(By Plaintiffs and the Class, or alternatively, the California Subclass)**

119. Plaintiffs incorporate the facts alleged above.

120. Plaintiffs bring this cause of action on behalf of themselves and the nationwide Class. In the alternative, Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

121. Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

122. Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the FTCA. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 USC § 52(a). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. §§ 233.1-233.2.

***The Deceptive Prong***

123. As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

124. Defendant's representations were misleading to Plaintiffs and other reasonable consumers.

125. Plaintiffs relied upon Defendant's misleading representations, as detailed above.

***The Unfair Prong***

126. As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

127. Defendant violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

128. The harm to Plaintiffs and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

129. Plaintiffs and the Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

130. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

131. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing the Modern Gents Products. Defendant's representations were a substantial factor in Plaintiffs' purchase decisions.

132. In addition, class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Modern Gents Products.

133. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the Class members.

134. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

135. For the claims under California's Unfair Competition Law, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in

the form of a full refund and/or measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**<u>Fourth Cause of Action</u>:**

**Breach of Contract**

**(By Plaintiffs and the Class, or alternatively, the California Subclass)**

136. Plaintiffs incorporate the facts alleged above.

137. Plaintiffs bring this cause of action on behalf of themselves and the Class. In the alternative, Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

138. Plaintiffs and Class members entered into contracts with Modern Gents when they placed orders to purchase Products on Defendant's website.

139. The contracts provided that Plaintiffs and Class members would pay Modern Gents for the Products ordered.

140. The contracts further required that Modern Gents provide Plaintiffs and Class members with Products that have a market value equal to the regular prices displayed on the website. They also required that Modern Gents provide Plaintiffs and Class members with the discount advertised on the website. These were specific and material terms of the contract.

141. The listed regular price, and specific discounts, were a specific and material term of each contract, and were displayed to Plaintiffs and Class members at the time they placed their orders.

142. Plaintiffs and Class members paid Modern Gents for the Products they ordered, and satisfied all other conditions of their contracts.

143. Modern Gents breached the contracts with Plaintiffs and Class members by failing to provide Products that had a market value equal to the regular price displayed on its website, and by failing to provide the promised discount.

144. Plaintiffs provided Defendant with notice of this breach of contract, by mailing notice letters to Defendant's California headquarters and to Defendant's

California registered agent on September 17, 2025 (for Ms. Warner), on October 20, 2025 (for Ms. Baadsgaard), and on October 14, 2025 (for Ms. Marquez).

145. As a direct and proximate result of Defendant's breaches, Plaintiffs and Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

146. For the breach of contract claims, Plaintiffs seek all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**Fifth Cause of Action:**

**Breach of Express Warranty**

**(By Plaintiffs and the Class, or alternatively, the California Subclass)**

147. Plaintiffs incorporate the facts alleged above.

148. Plaintiffs bring this cause of action on behalf of themselves and the nationwide Class. In the alternative, Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

149. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of Modern Gents products, issued material, written warranties by advertising that the Products had a market value equal to the regular price displayed on Defendant's website. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

150. This warranty was part of the basis of the bargain and Plaintiffs and members of the Class relied on this warranty.

151. In fact, the stated market value was not the market value. Thus, the warranty was breached.

152. Plaintiffs provided Defendant with notice of this breach of warranty, by mailing notice letters to Defendant's California headquarters and to Defendant's California registered agent on September 17, 2025 (for Ms. Warner), on October 20, 2025 (for Ms. Baadsgaard), and on October 14, 2025 (for Ms. Marquez).

153. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

154. For their breach of express warranty claims, Plaintiffs seek all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**Sixth Cause of Action:**

**Quasi-Contract/Unjust Enrichment**

**(By Plaintiffs and the Class, or alternatively, the California Subclass)**

155. Plaintiffs incorporate the facts alleged above, except alleges this claim in the alternative to the allegations concerning the existence of an express contract.

156. Plaintiffs bring this cause of action in the alternative to their Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of themselves and the nationwide Class. In the alternative, Plaintiffs bring this claim on behalf of themselves and the California Subclass.

157. As alleged in detail above, Defendant's false and misleading advertising concerning its regular prices and discounts caused Plaintiffs and the Class to purchase Modern Gents Products and to pay a price premium for these Products.

158. In this way, Defendant received a direct and unjust benefit at Plaintiffs' expense.

159. (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiffs and other Class members are void or voidable.

160. Plaintiffs and the Class seek restitution, and in the alternative, rescission.

161. For the quasi-contract/unjust enrichment claims, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a

full refund and/or measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**Seventh Cause of Action:**

**Negligent Misrepresentation**

**(By Plaintiffs and the Class, or alternatively, the California Subclass)**

162. Plaintiffs incorporate the facts alleged above.

163. Plaintiffs bring this cause of action on behalf of themselves and members of the nationwide Class. In the alternative, Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

164. As alleged in detail above, Defendant made false representations and material omissions of fact to Plaintiffs and Class members concerning the existence and/or nature of the discounts and savings advertised on its website.

165. These representations were false.

166. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

167. Defendant intended that Plaintiffs and Class members rely on these representations and Plaintiffs reasonably relied on them.

168. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Modern Gents Products.

169. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and Class members.

170. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or

(c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

171. For the negligent misrepresentation claims, Plaintiffs seek all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**<u>Eighth Cause of Action</u>:**

**Intentional Misrepresentation**

**(By Plaintiffs and the Class, or alternatively, the California Subclass)**

172. Plaintiffs incorporate the facts alleged above.

173. Plaintiffs bring this cause of action on behalf of themselves and members of the nationwide Class. In the alternative, Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

174. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and Class members concerning the existence and/or nature of the discounts and savings advertised on its website.

175. These representations were false.

176. When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

177. Defendant intended that Plaintiffs and Class members rely on these representations and Plaintiffs read and reasonably relied on them.

178. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Modern Gents Products.

179. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and Class members.

180. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

181. For the intentional misrepresentation claims, Plaintiffs seek all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

## VII. Relief.

182. Plaintiffs seek the following relief for themselves and the Class and Subclass:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiffs and the proposed Class and Subclass;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## Demand For Jury Trial

183. Plaintiffs demand the right to a jury trial on all claims so triable.

Dated: December 23, 2025

Respectfully submitted,

By: */s/ Jonas Jacobson*

Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Stephen Ferruolo (Cal. Bar No. 364158)
sferruolo@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*